T.C. Memo. 2003-168

UNITED STATES TAX COURT

ROBERT HENDERSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12135-01.                    Filed June 9, 2003.

Robert Henderson, pro se.

<u>Linette B. Angelastro</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined a deficiency of

$1,042 in petitioner's Federal income tax for 1999.[1]  After a

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

concession by respondent,[2] the issue for decision is whether a $5,000 payment that Robert Henderson (Mr. Henderson) received in 1999 in settlement of a claim against Morgan, Stanley, Dean Witter & Co. (Morgan Stanley) is excludable from petitioner's gross income under section 104(a)(2). We hold that it is not.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference. At the time he filed the petition, Mr. Henderson resided in Ojai, California.

A.   Petitioner's Motel Dispute

For a period of time during 1997, Mr. Henderson stayed at a motel in Monterey, California. To pay for his accommodations, Mr. Henderson used a credit card called Prime Option issued by Morgan Stanley. Following a dispute with the motel owner, Mr. Henderson paid the credit card account balance and canceled the credit card.

Approximately 10 weeks later in February 1998, the motel charged Mr. Henderson $780. Morgan Stanley accepted and paid the $780 charge to Mr. Henderson's account. Morgan Stanley then attempted collection from Mr. Henderson. When Mr. Henderson

---

[2] Respondent concedes that petitioner is not liable for self-employment tax of $706 under sec. 1402(a), reducing petitioner's deficiency to $336.

refused to pay this charge, Morgan Stanley reported to credit agencies that Mr. Henderson had defaulted on the account.

B.    Petitioner's Lawsuit Against Morgan Stanley

On November 18, 1998, Mr. Henderson filed suit against Morgan Stanley in the U.S. District Court for the Northern District of California.  On December 6, 1999, the parties reached a settlement wherein Morgan Stanley agreed to pay Mr. Henderson $5,000.

C.    Settlement Agreement

Mr. Henderson and Morgan Stanley memorialized this settlement by executing a document entitled "Settlement and Release Agreement" (settlement agreement).  The settlement provides, in part:

1.    [Morgan Stanley] shall pay to [Mr. Henderson] the total sum of $5,000.

2.    Effective upon receipt of the payment referred to above, [Mr. Henderson] hereby releases and fully discharges [Morgan Stanley] from any and all claims, demands, damages, and causes of action [Mr. Henderson] now has or in the future may have for detriment alleged in the pending action.

3.    [Morgan Stanley] hereby agrees to make a written request to remove the Prime Option trade line from the credit reports of the three major credit agencies in regard to the matters raised in the pending action.

4.    [Morgan Stanley] agrees to arrange to have the debt attributed to [Mr. Henderson] * * * forgiven.

The settlement agreement did not allocate the $5,000 settlement payment among monetary, emotional, and physical damages.

D.   1999 Tax Return

During 1999, Mr. Henderson received $5,000 from Discover Financial Services, Inc., in settlement of the lawsuit against Morgan Stanley.  On April 15, 2000, Mr. Henderson timely filed his 1999 Federal income tax return.  On his 1999 Federal tax return, Mr. Henderson excluded from gross income the $5,000 settlement payment.  Respondent issued a notice of deficiency to Mr. Henderson regarding his 1999 tax year.  In the notice of deficiency, respondent determined, inter alia, that petitioner failed to report taxable compensation of $5,000 for 1999.

OPINION

Petitioner does not dispute receiving the $5,000 settlement payment in 1999 to settle petitioner's claim against Morgan Stanley.  Petitioner contends, however, that the $5,000 settlement payment is not taxable because it comes under the exclusion of section 104(a)(2).  Respondent argues that the $5,000 settlement payment is includable in petitioner's gross income for 1999.  For the reasons stated below, we agree with respondent.

Section 61(a) provides that "gross income means all income from whatever source derived" except as otherwise provided.  The

definition of gross income is broad in scope, <u>Commissioner v. Glenshaw Glass Co.</u>, 348 U.S. 426, 429-430 (1955), and exclusions from gross income are narrowly construed, <u>United States v. Burke</u>, 504 U.S. 229, 248 (1992); <u>United States v. Centennial Sav. Bank FSB</u>, 499 U.S. 573, 583 (1991).

Respondent's determinations in the notice of deficiency are presumed correct, and petitioner must prove those determinations wrong in order to prevail.[3]  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).  As relevant to the present case, section 104(a)(2) excludes from gross income "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness".[4] The term "damages received" means an amount received "through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution."  Sec. 1.104-1(c), Income Tax Regs. Section 104(a) further provides that "emotional distress shall

---

[3] Petitioner does not contend that sec. 7491(a) is applicable to this case.

[4] The Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1605, 110 Stat. 1838 (1996 amendment), amended sec. 104(a)(2) to narrow the exclusion for personal injury damages received pursuant to a judgment or settlement, effective for amounts received after Aug. 20, 1996.  Under the 1996 amendment, personal injury or sickness must be physical in nature. Moreover, the amendment explicitly excepts punitive damages from the exclusion provided by sec. 104(a)(2).

not be treated as a physical injury or physical sickness" for purposes of section 104(a)(2) (except for damages not in excess of the amount paid for medical care attributable to emotional distress). Prasil v. Commissioner, T.C. Memo. 2003-100. According to the legislative history of section 104(a)(2), "the term emotional distress includes symptoms (e.g., insomnia, headaches, stomach disorders) which may result from such emotional distress." H. Conf. Rept. 104-737, at 301 n.56 (1996), 1996-3 C.B. 741, 1041 n.56.

Generally, damages are excludable from gross income if they satisfy two requirements. The Supreme Court in Commissioner v. Schleier, 515 U.S. 323, 336 (1995), established those requirements as:

> First, the taxpayer must demonstrate that the underlying cause of action giving rise to the recovery is 'based upon tort or tort type rights'; and second, the taxpayer must show that the damages were received 'on account of personal injuries or sickness.' * * *

The U.S. Court of Appeals for the Ninth Circuit, the court to which this case is appealable, held prior to the amendment of section 104(a)(2) that defamation may be considered a personal injury for purposes of section 104(a)(2). Roemer v. Commissioner, 716 F.2d 693 (9th Cir. 1983), revg. 79 T.C. 398 (1982). However, the amendment to section 104(a)(2), which does not otherwise change the section 104(a)(2) analysis set forth in Schleier, now requires that the payments be "on account of

personal physical injuries or physical sickness" for payments made after August 20, 1996.

In the instant case, petitioner received the $5,000 settlement payment pursuant to a settlement agreement with Morgan Stanley. When damages are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for settlement controls whether such amounts are excludable under section 104(a)(2). United States v. Burke, supra at 237. The determination of the nature of the claim is a factual inquiry and is generally made by reference to the settlement agreement. Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part and revd. in part on another issue 70 F.3d 34 (5th Cir. 1995), and cases cited therein. If the settlement agreement lacks express language stating what the settlement amount was paid to settle, we look to the intent of the payor, based on all the facts and circumstances of the case, including the complaint filed and details surrounding the litigation. Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Robinson v. Commissioner, supra at 127. If a settlement is attributable to claims based on tort or tort type rights as well as other rights, it may be necessary to determine which portion of the settlement is attributable to damages received based on tort or tort type rights. Similarly, it may be necessary to determine which portion, if any, of the settlement

may be attributable to damages received for personal physical injuries or physical sickness.

In the present case, we find petitioner meets the first part of the Schleier test, having brought a tort type action against Morgan Stanley alleging harm to his credit reputation. We now turn to the question of whether the $5,000 settlement payment was received on account of a personal physical injury or physical sickness. Petitioner asserts that Morgan Stanley paid the $5,000 settlement payment to petitioner as a result of damage he suffered to his credit reputation. The record, however, is devoid of specific information indicating that Morgan Stanley issued the settlement payment on account of damage to petitioner's credit reputation. We are not required to, and do not, accept petitioner's self-serving testimony without corroborating evidence. Lerch v. Commissioner, 877 F.2d 624, 631-632 (7th Cir. 1989), affg. T.C. Memo. 1987-295; Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Further, the record does not support a conclusion that petitioner's harm constitutes a physical injury or a physical sickness caused by the conduct of Morgan Stanley. On brief, petitioner alleged that he suffers from a "life-threatening, pre-existing physical illness" exacerbated by the harm to his personal reputation. Assertions on briefs are not

evidence.  Rule 143(b); <u>Davis v. Commissioner</u>, T.C. Memo. 1997-80.

Even assuming arguendo that petitioner suffered from a personal physical injury or physical sickness, the record does not support the conclusion that petitioner received the $5,000 settlement payment on account of such physical injury or physical sickness.  According to the settlement agreement, petitioner released "any and all claims" against Morgan Stanley in exchange for $5,000.  The settlement agreement, however, did not specifically carve out any portion of the settlement payment as a settlement on account of personal physical injury or physical sickness, let alone make reference to a physical injury or a physical sickness resulting from any reputation damage by Morgan Stanley.

The settlement agreement did not allocate any part of the settlement payment on account of a personal physical injury or physical sickness.  Furthermore, the evidence in the record does not support such an allocation.  Accordingly, we conclude that no portion of the $5,000 settlement payment was compensation for a personal physical injury or physical sickness.  Therefore, we sustain respondent's determination in this regard.

We have considered all of the other arguments made by the parties and, to the extent that we have not specifically addressed them, we conclude they are without merit.

To reflect the foregoing,

Decision will be

entered for respondent.